IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVA PEREZ, on behalf of plaintiff and the class members defined herein, ) ) ) Plaintiff, ) ) v. ) ) CONSUMER FINANCIAL SERVICES, ) CORPORATION, ) ) Defendant. ) | Case No. 24 C 3180<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION & ORDER

Plaintiff Eva Perez, on behalf of herself and the class members defined in the complaint, brings this class action complaint against defendant Consumer Financial Services, Corporation ("CFS"), alleging improper credit practices. Count I alleges violations of § 1638 of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, and its implementing regulation, Regulation Z, 12 C.F.R. § 1026.18; Count II alleges violations of the Illinois Consumer Installment Loan Act ("CILA"), 205 ILCS 670/1; and Count III alleges unfair and deceptive acts and practices in violation of the Illinois Consumer Fraud Act ("the Consumer Fraud Act"), 815 ILCS 505/2. Plaintiff filed her complaint in Illinois state court, and defendant removed the action to federal court on April 19, 2024. On June 10, 2024, the court denied plaintiff's motion for remand. On July 2, 2024, defendant moved to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 14). For the reasons discussed below, the court denies defendant's motion.

## BACKGROUND

As outlined in this court's prior opinion, according to the factual allegations in plaintiff's

complaint, defendant extends credit to consumers. Plaintiff states that she entered a loan transaction with defendant for personal, family, or household purposes, which gave defendant a security interest in an automobile. In connection with the transaction, plaintiff alleges that she signed or received: a promissory note and security agreement; a wage assignment; an application for a "car club membership"; a TILA disclosure statement, which disclosed an annual percentage rate ("APR") of 21.988%; and a personal property security list.

Plaintiff alleges that she was required to purchase a car club membership, and she was "specifically told that the car club membership was a condition for the extension of credit." According to plaintiff, the car club membership provides: roadside assistance for breakdowns, flat tires, dead batteries, and "the like" of not more than $75; costs of defending criminal and traffic charges arising out of the use of an automobile; cost of posting bail for charging arising out of the use of an automobile; and a reward for the recovery of a stolen automobile. Plaintiff claims that the car club membership meets the definition of a contract of insurance under Illinois law, "notwithstanding the statements in the application that it is not insurance," because it "involves insurance against the loss of the automobile, and against liability arising out of the ownership or use of the automobile."

According to plaintiff, defendant included the $120 premium for the membership in the amount financed. However, she claims that the price of the membership was an undisclosed finance charge. According to plaintiff, because the membership price was a finance charge, it changed the APR calculation. Thus, plaintiff claims that defendant understated the finance charge by $120, and the APR by "about 7%." Plaintiff alleges that the "true annual percentage rate was approximately 29.95%," and on information and belief, the "loss ratio" of the membership is "very low, such that it would not be approved as insurance." Plaintiff alleges it

is defendant's standard practice to require the purchase of a car club membership to include that premium "in the amount financed and not in the finance charge." She further alleges that defendant "did not disclose that the car club membership could be obtained from a person of the consumer's choice."

Defendant moves to dismiss all counts of plaintiff's complaint for failure to state a claim based on the exhibits attached to the complaint. Specifically, plaintiff attached her application for the auto club membership, which is signed and acknowledged by plaintiff. The application provides that purchase of the membership is not a required condition for the loan ("This is not an Automobile Liability Insurance Contract."). Further, in the signing application, plaintiff attested that she "fully understand[s] that the membership is NOT INSURANCE of any kind and the benefits to which [she] would be entitled upon acceptance hereof are governed by the applicable state laws pertaining to auto clubs or associations." The application further states that plaintiff may cancel the membership within 30 days of membership and receive a full refund, and that "[p]urchase of the Motor Club Membership is not a required condition of the loan."

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

According to defendant, the court should dismiss all counts pursuant to Rule 12(b)(6). Defendant argues that Count I should be dismissed because the complaint's exhibits contradict plaintiff's claim that defendant failed to comply with TILA. Defendant argues that Counts II and III should be dismissed because compliance with TILA is a complete defense to claims under CILA and the Consumer Fraud Act when the claims are premised on the same facts. The court will address each argument.

Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Section 1605(a) of TILA defines a "finance charge" as "[t]he sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditors and incident to the extension of credit," not including "charges of a type payable in a comparable cash transaction."[1] 15 U.S.C. § 1605(a). The Federal Reserve Board promulgated Regulation Z, 12 C.F.R. § 1026 (formerly numbered 12 C.F.R. § 226), to implement TILA.

First, defendant argues that plaintiff fails to state a claim pursuant to TILA in Count I. Defendant argues that the auto club membership is not "insurance" under Illinois law, and even if it is insurance, the cost of the membership was not an undisclosed finance charge. According to defendant, the membership is not "insurance" because "insurance" generally refers to "a policy issued by an authorized and licensed insurance company whose primary business is to

---

[1] The "amount financed" is calculated by subtracting "any prepaid finance charge" from the "principal loan amount or the cash price" plus "any other amounts that are financed by the creditor and are not part of the finance charge." 12 C.F.R. § 1026.18(b).

assume certain risks of loss of its insureds, in exchange for the payment of a 'premium.'" According to defendant, because plaintiff does not allege that defendant is an authorized and licensed insurance company, or that defendant is primarily in the business of assuming risks of loss to insureds in exchange for premiums, plaintiff fails to state a claim under TILA.

Rather, defendant argues that plaintiff alleges that defendant is a creditor as defined in TILA and a licensee as defined by CILA, and it is engaged in the business of extending credit, not insurance, to consumers. Defendant further argues that the application for the auto club membership stated that it was not insurance, and in signing the application, plaintiff attested that she understood that the membership was "NOT INSURANCE of any kind."

Plaintiff responds that the Seventh Circuit has held that a plaintiff does not plead herself out of court when she attaches a document to a complaint "not in order to vouch for the truth of the statements in it" but to specifically allege a fraudulent representation. Carroll v. Yates, 362 F.3d 984, 986 (7th Cir. 2004). While plaintiff acknowledges that the membership application states that it is not insurance, she argues that it is insurance in fact. According to plaintiff, Illinois law defines "insurance" as a "contract for the assumption of risk by the insurer whereby the insurer agrees to indemnify the insured for potential pecuniary loss to the insured resulting from certain specified perils." Plaintiff cites Homeward Bound Servs. v. Ill. Dep't of Ins., 365 Ill. App. 3d 267, 272 (3d Dist. 2006), which itself cited Griffin Systems, Inc. v. Washburn, 153 Ill.App.3d 113 (1987), to support her definition.

Plaintiff argues that "[t]he car club membership involves insurance against the loss of the automobile, and against liability arising out of the ownership or use of the automobile, notwithstanding the statements in the application that it is not insurance." She cites several persuasive precedents that have so ruled on similar facts under similar state laws. See Love v.

Money Tree, Inc., 279 Ga. 476, 479 (2005); People by Abrams v. American Motor Club, 520 N.Y.S.2d 383, 385 (1st Dept. 1987); Arkansas Motor Club v. Arkansas Employment Sec. Div., 237 Ark. 419, 424 (1963); Texas Ass'n. of Qualified Drivers v. Texas, 361 S.W.2d 580, 582 (Tex. Civ. App. 1962); Continental Auto Club, Inc. v. Commissioner of Insurance, 337 Mich. 434, 437 (1953).

The court agrees with plaintiff that she has plausibly alleged that the auto club membership is "insurance" under Illinois law as stated in Homeward Bound Servs. v. Ill. Dep't of Ins., 365 Ill. App. 3d 267, 272 (3d Dist. 2006). Defendant's arguments about whether defendant is an insurance provider fall flat. As the court acknowledged in Homeward Bound, "[t]he nature of a contract as one of insurance depends upon its contents and the true character of the contract actually entered into or issued." Id. at 276 (internal quotations omitted). The court determined that, "whether a contract is one of insurance is to be determined by a consideration of the real character of the promise or of the act to be performed, and by a consideration of the exact nature of the agreement in the light of the occurrence, contingency, or circumstances under which the performance becomes requisite, and not by what it is called." Id. (internal quotations omitted).

Yet, defendant argues that even if plaintiff has alleged that the membership is "insurance," plaintiff still fails to state a claim in Count I because the exhibits attached to her complaint contradict her allegation that purchase of the membership was mandatory. The application states that "[p]urchase of the Motor Club Membership is not a required condition of the loan," and defendant emphasizes that parties who sign written contracts are presumed to have notice of all the contract terms. See Janiga v. Questar Capital Corp., 615 F.3d 735, 743 (7th Cir. 2010). The application also stated that plaintiff could cancel the membership within 30 days of

membership and receive a full refund.

Plaintiff counters that the complaint alleges that she was "specifically told that the car club membership was a condition for the extension of credit." She emphasizes that TILA and Regulation Z permit certain types of insurance agreements to be excluded from the finance charge if: (1) the consumer is not required to purchase them in fact; (2) that fact is disclosed; and (3) in some cases, certain other requirements are met. See 12 C.F.R. § 1026.4(d). For example, voluntary credit insurance premiums may be excluded from the finance charge if:

> (i) The insurance coverage is not required by the creditor, and this fact is disclosed in writing.
>
> (ii) The premium for the initial term of insurance coverage is disclosed in writing . . . .
>
> (iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph, except as provided in paragraph (d)(4) of this section . . . .

12 C.F.R. § 1026.4(d)(1)(i)–(iii). In addition, property insurance premiums that insure against loss of or damage to property, or against liability arising out of the ownership or use of property, may be excluded from the finance charge if:

> (i) The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed . . . .
>
> (ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed . . . . .

12 C.F.R. § 1026.4(d)(2).

Plaintiff cites Muñoz v. JLO Auto., Inc., 3:19-cv-01793 (MPS), 2020 WL 6607789 (D. Conn. Nov. 12, 2020), which addresses a similar theory to defendant's motion. In Muñoz, the plaintiff alleged that the defendant stated that the relevant insurance was mandatory. Id. at *1. On plaintiff's motion for reconsideration, the court reasoned that because it must accept the

factual allegations as true and draw all reasonable inferences in favor of the plaintiff, "[the court] must accept that [guaranteed auto protection ("GAP")] insurance was in fact mandatory—which t[ook the defendant's] conduct out of the exemption in the above-quoted portion of Regulation Z." Id. at *2 (quoting 12 C.F.R. § 226.4(d)(3)).

The Muñoz court further determined that Regulation Z was clear, but even if it were ambiguous, "[t]he Federal Reserve Board, which promulgated Regulation Z, has stated, through its staff, that items such as GAP insurance must be, in fact, voluntary to be lawfully excluded from the finance charge." Id. at *3 (citing Truth in Lending, Amendments to Regulation Z and staff commentary, 75 Fed. Reg. 76508-01 (Feb. 22, 2010)). The Federal Reserve Board has determined that "[w]hether the insurance or coverage is in fact required or optional is a factual question," and "[i]f the insurance or coverage is required, the premiums must be included in the finance charge, whether the insurance or coverage is purchased from the creditor or from a third party." Id. Board staff opinions construing TILA and Regulation Z are dispositive unless demonstrably irrational. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).

This court agrees with plaintiff, and the Muñoz court, and concludes that plaintiff has plausibly alleged that the auto club membership was mandatory insurance obtained "through" defendant. In light of plaintiff's allegation that she was "specifically told that the car club membership was a condition for the extension of credit," the court is not convinced by defendant's argument that plaintiff has not alleged that it "affirmatively represented, by words or by conduct, that insurance was in fact required." This is a factual dispute that the court cannot resolve on a motion to dismiss.

Thus, plaintiff has plausibly alleged that the membership fee was not subject to exemption for disclosure under Regulation Z as a finance charge. See Brugger v. Elmhurst Kia,

01-cv-1860, 2001 WL 845472, at *2 (N.D. Ill. July 18, 2001). The court rejects defendant's argument that the membership was not an <u>undisclosed</u> financed charge because it is not a finance charge in the first place.[2] At this stage, the court is unable to determine whether auto club memberships are offered to or required in comparable cash transactions. <u>See</u> Regulation Z, Supp. I, 12 C.F.R. § 226.4(a). Moreover, Regulation Z contemplates that the cost of mandatory credit and property insurance premiums are included in the finance charge if obtained "from and through" the creditor.

Accordingly, the court denies defendant's motion to dismiss Count I. Plaintiff has plausibly alleged that defendant violated TILA by understating the finance charge and consequent APR. Because defendant's arguments to dismiss Counts II and III depend on its perceived inadequacy of plaintiff's TILA claim,[3] this court also denies defendant's motion to dismiss Counts II and III.

---

[2] According to defendant, TILA provides that the finance charge does not include "charges of a type payable in the comparable cash transaction." <u>See</u> <u>Dees v. Bob O'Connor Ford Inc.</u>, No. 94 C 7083, 1995 WL 441629, at *2 (N.D. Ill. July 20, 1995) (<u>quoting</u> 15 U.S.C. § 1605(a)). Defendant also emphasizes that Regulation Z states that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor are not finance charges, as long as the creditor does not retain the charges." <u>Dees</u>, 1995 WL 441629, at *2 (<u>citing</u> Regulation Z, Supp. I, 12 C.F.R. § 226.4(a)(3) (1991)).

[3] Defendant argues that its compliance with TILA is a complete defense to both claims.

**CONCLUSION**

For the reasons stated above, the court denies defendant's motion to dismiss (Doc. 14). Defendant is directed to answer plaintiff's complaint on or before September 11, 2024. The parties are directed to file a joint status report using this court's form on or before September 25, 2024.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: August 21, 2024**